STROUD, Judge.
 

 *609
 
 Respondent-mother appeals from an order terminating her parental rights
 
 [1]
 
 to C.D.H. ("Connor").
 
 [2]
 
 Because the record before this Court is silent on the reasons for mother's absence from the hearing and from mother's counsel's justification for her actions during the termination hearing, we remand for further proceedings.
 

 *610
 
 I. Background
 

 On 8 September 2016, the Guilford County Department of Health and Human Services ("DHHS") filed a petition alleging that Connor was a neglected and dependent juvenile. DHHS detailed Mother's history of substance abuse, mental health issues, and unstable housing. Because of these problems, Mother agreed to allow Connor to reside in a kinship placement with his maternal great-uncle and great-aunt beginning in May 2016. These relatives later asked for Connor to be removed from their home, and, on 11 October 2016, DHHS placed him in foster care.
 

 On 14 September 2016, the trial court held a hearing to determine the need for continued nonsecure custody of the child. Mother attended this hearing, and the trial court set the next hearing for 9 November 2016. On that date, the trial court held a hearing for pre-adjudication, adjudication, and disposition; Mother did not attend. At the pre-adjudication hearing, Mother's counsel made an oral motion to continue due to Mother's absence. The trial court denied the motion, finding that Mother was present in court on 14 September 2016 when the case was set for hearing for 9 November; the social worker had spoken to mother on the phone on 8 November 2016 to remind her of the hearing; Mother had not maintained contact with her counsel since the prior court date; and, there was no valid reason to excuse her absence. On 7 December 2016, the trial court filed its order based upon the 9 November hearing adjudicating Connor as a neglected juvenile. Mother was ordered to enter into and cooperate with a case plan addressing her issues with housing, employment, parenting skills, mental health, and substance abuse. Mother was granted one hour of supervised visitation per week.
 

 On 16 December 2016, the trial court held a Juvenile Court Infant/Toddler Initiative ("JCITI") status review hearing and entered an order noting Mother's noncompliance with her case plan; again, Mother was not present. The trial court noted that Mother had attended only two of six visits with the child and that she was "in the process of complying" with the "parenting/psychological evaluation" and obtaining employment, but she had failed to comply with any other requirements.
 

 On 13 January, 2017, the trial court held another JCITI status review hearing; once
 
 *692
 
 again, Mother did not attend. The court found her level of compliance with her plan had decreased since the prior hearing, although she continued to visit with Connor erratically and maintained some contact with DSS.
 

 On 8 February 2017, the trial court held a permanency planning hearing; once again, Mother did not attend, although her counsel was
 
 *611
 
 present on her behalf. On 10 March 2017, the trial court entered its permanency planning order which found that Mother had still not entered into her required case plan. The court set the primary permanent plan as adoption with a secondary plan of reunification and ordered DHHS to seek to terminate Mother's rights within 60 days.
 

 On 13 April 2017, DHHS filed a motion in the cause to terminate Mother's parental rights on the grounds of neglect, failure to pay a reasonable portion of Connor's cost of care, and dependency.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(1),(3),(6) (2017). Hearings on the motion to terminate were scheduled and continued several times, usually due to the court's inability to hear the case due to other cases in progress.
 

 On 26 July 2017, the trial court held a permanency planning hearing; once again, Mother was not present in court but her counsel was present on her behalf. The trial court found that Mother still had not entered into her case plan. She was visiting with the child some, although inconsistently, but she did "for the most part" maintain "contact with the Court, The Department, and the Guardian ad Litem."
 

 The motion for termination was scheduled for hearing on 5 December 2017. Mother's counsel made a motion to continue the hearing, but the trial court denied her motion, finding that "Respondent Mother represented to her attorney that she has a Court date today in High Point to address a traffic matter. The Court reviewed the Court database and there is no matter scheduled for [Mother] today." However, the trial court did continue the hearing for other reasons, noting that "extraordinary circumstances making it necessary to extend the 90 day trial requirement for the proper administration of justice[,]" and the hearing was set for 30 January 2018. On 10 January 2018, the trial court held another permanency planning hearing. Again, Mother was not present but her counsel was present.
 

 The motion for termination was heard on 13 February 2018. Mother was not present in court but was represented by her court-appointed attorney. Mother's counsel did not advise the trial court of any attempts to contact Mother, move to continue the hearing, object to any evidence presented at the hearing, cross-examine DHHS' witnesses, and or present evidence or arguments on Mother's behalf.
 

 On 7 March 2018, the trial court entered an order terminating Mother's parental rights to Connor. The court concluded that all three grounds for termination alleged by DHHS existed and that termination was in Connor's best interest. Mother timely filed notice of appeal.
 

 *612
 
 II. Ineffective Assistance of Counsel
 

 Mother's sole argument is that she received ineffective assistance of counsel ("IAC") because her trial counsel did nothing to advocate on her behalf during the termination hearing.
 

 "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."
 
 In re K.N.
 
 ,
 
 181 N.C.App. 736
 
 , 741,
 
 640 S.E.2d 813
 
 , 817 (2007) (quoting
 
 Santosky v. Kramer
 
 ,
 
 455 U.S. 745
 
 , 753-54,
 
 102 S.Ct. 1388
 
 ,
 
 71 L.Ed. 2d 599
 
 , 606 (1982) ). North Carolina provides indigent parents facing the termination of their parental rights with a statutory right to the assistance of counsel "unless the parent waives the right." N.C. Gen. Stat. § 7B-1101.1(a) (2017). This statutory right "includes the right to effective assistance of counsel."
 
 In re Bishop
 
 ,
 
 92 N.C.App. 662
 
 , 665,
 
 375 S.E.2d 676
 
 , 678 (1989). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing."
 
 In re J.A.A.
 
 ,
 
 175 N.C.App. 66
 
 , 74,
 
 623 S.E.2d 45
 
 , 50 (2005).
 

 *693
 
 A. Deficient Performance
 

 Mother first contends that her counsel's failure to advocate for her at the termination hearing constituted deficient performance.
 
 See
 

 In re S.N.W.
 
 ,
 
 204 N.C.App. 556
 
 , 560,
 
 698 S.E.2d 76
 
 , 79 (2010) ("It is well established that attorneys have a responsibility to advocate on the behalf of their clients."). The transcript reflects that when the termination hearing began, Mother was not present, and neither counsel nor the trial court addressed Mother's absence.
 
 [3]
 
 Mother's attorney remained present in the courtroom while the hearing was conducted, but she did not object during the testimony of DHHS' witnesses, did not cross-examine those witnesses, and did not present any evidence. At the conclusion of both the adjudication and dispositional phases of the hearing, Mother's counsel declined to make any argument on her behalf. Mother contends that counsel's lack of advocacy fell below any "objective standard of reasonable representation."
 

 The record on appeal contains insufficient information to allow us to review Mother's claim, because it is silent on the reasons why counsel acted as she did. As an appellate court, we can only know what is
 
 *613
 
 included in the record before us.
 
 See
 

 State v. Lawson
 
 ,
 
 310 N.C. 632
 
 , 641,
 
 314 S.E.2d 493
 
 , 499 (1984) ("[T]his Court is bound on appeal by the record on appeal as certified and can judicially know only what appears in it."). The record here provides very limited evidence regarding Mother's relationship with her counsel. The orders entered by the trial court indicate Mother attended only one hearing in the entire case, the nonsecure custody hearing on 9 September 2016. After that, she did not attend court for any of the hearings conducted throughout this case. The orders also show she was consistently represented by the same trial counsel at each hearing, but except for her counsel's motions to continue on 9 November and 5 December 2017, there is no other information about Mother's reasons for her absence or her counsel's communication with her about attending court. The orders did contain findings that Mother generally stayed in contact with DHHS and engaged in visits with Connor while the case progressed, including after the motion for termination was filed. In fact, her last visit with Connor was on 17 December 2017, less than three months before the termination hearing.
 

 Because of her failure to attend any court hearings since the first hearing in September 2016, Mother may have waived her right to effective counsel through her own actions.
 
 See
 

 In re R.R.
 
 ,
 
 180 N.C.App. 628
 
 , 636,
 
 638 S.E.2d 502
 
 , 507 (2006) ;
 
 Bishop
 
 ,
 
 92 N.C.App. at 666-67
 
 ,
 
 375 S.E.2d at 679-80
 
 (holding that counsel will not be deemed ineffective when their alleged deficiencies are attributable to their client's conduct);
 
 In re S.N.W.
 
 ,
 
 204 N.C.App. at 561
 
 ,
 
 698 S.E.2d at 79
 
 ("[A] lawyer cannot properly represent a client with whom he has no contact."). Perhaps Mother's cooperation with her counsel was no better than her cooperation with her case plan, but the record does not compel that conclusion, so we cannot determine whether she waived her right to representation or undermined her counsel's ability to advocate for her. We can only engage in speculation on the reasons why counsel did not advocate on Mother's behalf.
 

 Counsel's failure to advocate for Mother is not necessarily an indication of ineffective assistance of counsel. Counsel certainly said nothing negative regarding Mother, and it is possible that "resourceful preparation reveal[ed] nothing positive to be said for" Mother.
 
 See
 

 State v. Davidson
 
 ,
 
 77 N.C.App. 540
 
 , 546,
 
 335 S.E.2d 518
 
 , 522 (1985). But we cannot make any determination from this record.
 

 Since we do not have a sufficient record to determine if Mother waived her right to effective counsel by her failure to participate or other potential reasons for counsel's lack of advocacy, the appropriate remedy is to remand to the trial court so it may find those facts.
 
 See
 

 *614
 

 In re S.N.W.
 
 ,
 
 204 N.C.App. at 561
 
 ,
 
 698 S.E.2d at 79
 
 ("[W]e remand for determination by the trial court regarding efforts by Respondent's counsel to contact and adequately represent Respondent at the
 
 *694
 
 termination of parental rights hearing and whether Respondent is entitled to appointment of counsel in a new termination of parental rights proceeding.");
 
 cf.
 

 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 167,
 
 557 S.E.2d 500
 
 , 525 (2001) ("Indeed, because of the nature of IAC claims, defendants likely will not be in a position to adequately develop many IAC claims on direct appeal."). On remand, the trial court should inquire into "efforts by Respondent's counsel to contact and adequately represent Respondent at the termination of parental rights hearing" and determine "whether Respondent is entitled to appointment of counsel in a new termination of parental rights proceeding."
 
 In re S.N.W.
 
 ,
 
 204 N.C.App. at 561
 
 ,
 
 698 S.E.2d at
 
 79 ;
 
 see also
 

 In re D.E.G.
 
 ,
 
 228 N.C.App. 381
 
 , 386-87,
 
 747 S.E.2d 280
 
 , 284 (2013) ("[B]efore ... relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court must inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected.").
 

 B. Prejudice
 

 Both DHHS and the guardian
 
 ad litem
 
 encourage us to hold that Mother's ineffective assistance claim must fail because, even if her counsel was deficient, she cannot show prejudice from her counsel's allegedly deficient conduct. Under this theory, counsel's total lack of advocacy throughout the termination hearing is immaterial, because even the most compelling advocacy would not have changed the outcome and stopped the trial court from terminating Mother's parental rights. This is not a conclusion we can reach from the sparse record before us. We decline to speculate about what trial counsel "could have" argued below or how it would have affected the outcome, without being privy to counsel's knowledge of the underlying facts. If a prejudice determination is necessary, the trial court should make this determination after it has received evidence regarding the facts surrounding counsel's conduct, mother's participation in the case, and other relevant circumstances.
 

 III. Conclusion
 

 This Court has a duty to ensure that Mother received a fair hearing, and we must adhere to our prior admonition that "procedural safeguards ... must be followed to ensure the 'fundamental fairness' of termination proceedings."
 
 In re S.N.W.
 
 ,
 
 204 N.C.App. at 561
 
 ,
 
 698 S.E.2d at 796
 
 . Since the record before us is silent on counsel's justification for
 
 *615
 
 her actions during the termination hearing, the appropriate remedy is to remand to the trial court for a hearing to determine whether counsel's actions were deficient, and, if so, whether counsel's deficiencies deprived the parent of a fair hearing.
 
 See
 

 In re M.G.
 
 ,
 
 239 N.C.App. 77
 
 , 83,
 
 767 S.E.2d 436
 
 , 441 (2015) ("[T]his Court has consistently vacated or remanded [termination of parental rights] orders when questions of 'fundamental fairness' have arisen due to failures to follow basic procedural safeguards."). Accordingly, this case is remanded to the trial court to determine if Mother received ineffective assistance of counsel and for any further proceedings required depending upon the trial court's determination regarding assistance of counsel.
 

 REMANDED.
 

 Judges INMAN and ZACHARY concur.
 

 [1]
 

 Connor's father relinquished his parental rights and is not a party to this appeal.
 

 [2]
 

 A pseudonym is used to protect the identity of the minor child and for ease of reading.
 

 [3]
 

 We recognize the possibility that the trial court and counsel discussed Mother's absence off the record, but we can review only what is shown by the transcript and record on appeal.