An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-786

Filed 17 June 2026

Caldwell County, Nos. 22JT000005-130, 22JT000006-130

IN THE MATTER OF: S.D.H., D.W.H.

Appeal by Respondent-Father from order entered 14 May 2025 by Judge Mark L. Killian in Caldwell County District Court. Heard in the Court of Appeals 10 March 2026.

*Stephen M. Schoeberle for Petitioners-Appellees.*

*Hooks Law, P.C., by Laura G. Hooks, for Respondent-Appellant-Father.*

*No brief filed on behalf of the Guardian ad Litem.*

CARPENTER, Judge.

Respondent-Father appeals from an order terminating his parental rights. On appeal, Respondent-Father argues that he received ineffective assistance of counsel ("IAC"). After careful review, we affirm.

## I. Factual & Procedural Background

This matter returns to the Court following our remand of a disposition order terminating Respondent-Father's parental rights to Stella and Decker (collectively,

the "Juveniles").[1]  *See In re S.D.H.*, 296 N.C. App. 392, 908 S.E.2d 868 (2024).  We incorporate that statement of facts and procedural posture here.

During the original termination hearing on 22 August 2023 ("the First Hearing"), the Paternal Grandparents ("Petitioners") and Respondent-Father testified.  In an order entered 3 October 2023, the trial court concluded that termination was in the Juveniles' best interests.  Because the dual-role Guardian ad Litem ("GAL") offered no evidence of an investigation or corresponding best-interest recommendations, we vacated and remanded for a new disposition hearing.  *See id.* at 404–05, 908 S.E.2d at 878.

Thereafter, Petitioners filed notices of hearing.  Respondent-Father was duly served.  On 4 March 2025, the trial court conducted a dispositional pre-trial hearing and entered its subsequent order ("Pre-Trial Order").  In the Pre-Trial Order, the trial court found that all notice requirements were met, although Respondent-Father was not present in court.

On 18 March 2025, the trial court held a new disposition hearing.  Respondent-Father failed to appear. At the outset, Respondent-Father's counsel noted Respondent-Father's absence, stating, "I have had no contact with [Respondent-Father] and his family in a significant period of time. But I indicated that I would

---

[1] Pseudonyms are used to protect the Juveniles' identities.  *See* N.C. R. App. P. 42(b) (2025).

stand in so nobody else would have to be appointed." The trial court admitted the transcript from the First Hearing without objection.

In stark contrast to the First Hearing, the GAL both testified and prepared a written dispositional report, which the trial court admitted into evidence. The GAL described the Juveniles' bond with Respondent-Father as "non-existent."

> I don't believe he's had any contact with [the Juveniles] in several years. Even prior to that he had chosen to separate himself either through drug use, incarceration, and then just failure to take any steps to raise the children. From the court records, it appears that there were a number of attempts to serve him with child support papers and documents, which were returned for whatever reason.

Respondent-Father never sent the Juveniles a card or "any other acknowledgment, other than appearing in court." Respondent-Father also "apparently evaded service" for proceedings concerning his child support obligations, according to the GAL.

Based on his investigation, the GAL opined that terminating Respondent-Father's parental rights was in the Juveniles' best interests. He also noted that Petitioners had assumed exclusive care of the Juveniles "over the past four or five years," were "closely bonded" with the Juveniles, and were prepared to adopt the Juveniles.

Respondent-Father's counsel did not cross-examine the GAL or make a closing argument. On 14 May 2025, the trial court entered its disposition order terminating Respondent-Father's parental rights. Respondent-Father timely appealed.

## II.    Jurisdiction

This Court has jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2025).

## III.  Issue

The issue is whether Respondent-Father received IAC where the record does not show Respondent-Father received actual notice of the second disposition hearing, and counsel presented minimal advocacy in Respondent-Father's absence.

## IV.  Analysis

Respondent-Father argues that he was deprived of a fair disposition hearing on remand because the record does not affirmatively show he received actual notice of the hearing.  Respondent-Father also contends he received IAC because counsel failed to present evidence, conduct cross-examination, or preserve potential issues for appeal.  We disagree.

"A parent in a termination of parental rights proceeding has a statutory right to counsel pursuant to [section 7B-1101.1], which inherently requires effective assistance from that counsel." *In re Z.M.T.*, 379 N.C. 44, 48, 864 S.E.2d 250, 253 (2021) (citing *In re T.N.C.*, 375 N.C. 849, 854, 851 S.E.2d 29, 32 (2020)).  "To succeed in a claim for [IAC], respondent must satisfy a two-prong test, demonstrating that (1) counsel's performance was deficient; *and* (2) such deficient performance by counsel was so severe as to deprive respondent of a fair hearing." *Id.* at 48, 864 S.E.2d at 253 (emphasis in original) (citing *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985)).  "To make the latter showing, the respondent must prove that there is a

reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *In re T.N.C.*, 375 N.C. at 854, 851 S.E.2d at 33 (citation and quotation marks omitted).

"There is 'a strong presumption that counsel's conduct falls within the range of reasonable professional assistance.'" *In re L.N.H.*, 382 N.C. 536, 541, 879 S.E.2d 138, 143 (2022) (quoting *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004)). At disposition, the trial court has wide discretion to admit "*any* evidence that it considers to be relevant, reliable, and necessary in its inquiry into the child's best interests—even if such evidence would be inadmissible under the Rules of Evidence." *In re R.D.*, 376 N.C. 244, 251, 852 S.E.2d 117, 124 (2020) (emphasis in original).

"It is well established that attorneys have a responsibility to advocate on the behalf of their clients." *In re S.N.W.*, 204 N.C. App. 556, 560, 698 S.E.2d 76, 79 (2010) (citation omitted). However, "[c]ounsel's failure to advocate for [a respondent-parent] is not necessarily an indication of ineffective assistance of counsel." *In re C.D.H.*, 265 N.C. App. 609, 613, 829 S.E.2d 690, 693 (2019). In certain circumstances, limited advocacy is a permissible strategic choice where "resourceful preparation reveal[ed] nothing positive to be said" on a respondent's behalf. *Id.* at 614, 829 S.E.2d at 693 (citation and quotation marks omitted). " 'Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for [a party] to bear.'" *In re L.N.H.*, 382 N.C. at

542, 879 S.E.2d at 143 (alteration in original) (quoting *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001)).

Assuming without deciding that counsel's performance was deficient, Respondent-Father's IAC claim fails because he cannot show a reasonable probability of a different result. *See In re T.N.C.*, 375 N.C. at 854, 851 S.E.2d at 33. On remand, the trial court received both testimony and documentary evidence from the GAL, thus rectifying the structural error from the First Hearing and providing a basis for appellate review. *See In re S.D.H.*, 296 N.C. App. at 404, 908 S.E.2d at 879.

The GAL's evidence informed the trial court's best interests determination, including the lack of a bond between Respondent-Father and the Juveniles, Respondent-Father's lack of contact with the Juveniles, and Petitioners' ability and willingness to provide permanence through adoption. *See* N.C. Gen. Stat. § 7B-1110(a) (2025). We note Respondent-Father has not challenged any of the trial court's robust findings, including the statement that "all requirements of due process have been met." Moreover, overwhelming evidence supports the trial court's conclusion that termination was in the Juveniles' best interests. Further, we decline to question counsel's strategic decision not to object to admission of the transcript of the First Hearing, where Respondent-Father testified, particularly when Respondent-Father failed to appear for the second hearing. *See In re L.N.H.*, 382 N.C. at 542–43, 879 S.E.2d at 143–44. As a result, Respondent-Father cannot carry his burden to show "a reasonable probability that, but for counsel's errors, there would have been a

different result in the proceedings." *In re T.N.C.,* 375 N.C. at 854, 851 S.E.2d at 33; *In re L.N.H.,* 382 N.C. at 541–42, 879 S.E.2d at 143.

## V.    Conclusion

Under these facts and circumstances, Respondent-Father failed to demonstrate a reasonable probability of a different result but for counsel's alleged deficiencies.  Accordingly, we affirm.

AFFIRMED.

Judges TYSON and FLOOD concur.

Report per Rule 30(e).